# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ERIK PETERSON, | Case No. 21-CV-458 (NEB/KMM) |
| Plaintiff, | |
| v. | ORDER ON MOTION TO AMEND, MOTIONS TO DISMISS, AND MOTION FOR ATTORNEYS' FEES |
| CITY OF NORTH ST. PAUL, TOM LAUTH, ROBB L. OLSON, and JASON ZIEMER, | |
| Defendants. | |

---

In January 2014, Erik Peterson received a parking ticket while parked in a North St. Paul city lot. Peterson went to the police station to protest the ticket. After a confrontation with officers, Peterson was arrested for disorderly conduct; several complaints and lawsuits followed. First, Peterson filed two citizen complaints against the officers involved in the January incident. Chief of Police Tom Lauth investigated the complaints and issued a report determining that Peterson's claims were unsubstantiated. Peterson then filed a complaint about that investigation. The City of North St. Paul retained attorney Robb L. Olson, a defendant here, to conduct an independent review of the third complaint. Attorney Olson concluded that the complaint was unfounded, and in response, Peterson sued Attorney Olson, the City, Chief Lauth, and City Manager Jason Ziemer. He alleges several procedural due process violations: a general claim based

on the "complained of events," a violation stemming from Olson's review of the report, and a violation based on the City's issuance of a trespass notice that restricted him from entering North St. Paul City Hall. Defendants moved to dismiss, and some Defendants moved for attorneys' fees. After Defendants filed their motions to dismiss, Peterson sought leave to amend his Complaint. For the reasons that follow, the Court grants the motions to dismiss and the motion for attorneys' fees and denies the motion to amend.

## BACKGROUND

In January 2014, Peterson received a ticket for parking in a North St. Paul city lot for more than twelve hours, and his vehicle was towed. (ECF No. 1-2[1] ("Lauth Report") at 1); *Peterson v. Ellis*, No. A20-520, 2020 WL 7689735, at *1 (Minn. Ct. App. Dec. 28, 2020). He then went to the North St. Paul Police Department's front desk to protest the ticket. (Lauth Report at 1.) While there, Peterson became "angry and upset," and his tone was "loud, aggressive and confrontational." (*Id.* at 2.) He demanded to speak to the Chief of Police, but Chief Lauth was unavailable, so the front desk staff member called Captain Dustin Nikituk to speak with Peterson. (*Id.*) Peterson directed "offensive profanities" and "derogatory remarks" at Captain Nikituk. (*Id.*) Captain Nikituk advised Peterson to calm

---

[1] The Court may consider "exhibits attached to the complaint whose authenticity is not questioned" without converting Defendants' motions to dismiss into motions for summary judgment. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

down, but Peterson persisted, and eventually approached Captain Nikituk in an intimidating manner. (*Id.*)

Captain Nikituk then asked staff to summon additional officers. (*Id.*) Chief Lauth arrived at the common area and heard Peterson make derogatory remarks toward the officers. (*Id.*) Two officers, Mike Lang and Jason Maltby, followed Peterson as he exited City Hall. (*Id.*) The officers told Peterson that he was no longer welcome at City Hall because of his disruptive behavior. (*Id.*) Peterson responded by yelling and directing profanities at the officers. (*Id.*) The officers told Peterson to leave, but Peterson refused, so the officers arrested him for disorderly conduct.[2] (*Id.* at 2–3.)

In the ensuing months, Peterson filed two "Citizen Complaint Forms" with the City. (*See* ECF No. 1 ("Compl.") ¶ 12; ECF No. 14, Exs. B, C.) In these complaints, Peterson claimed that: (1) Captain Nikituk assaulted him in the police hallway, including by "putting his shoulder into [Peterson's] chest"; (2) Officer Lang or Maltby opened his car door without his permission; (3) Captain Nikituk illegally arrested him "to cover up [Nikituk's] crime"; and (4) Officer Maltby did not correctly report the January 2014 incident. (ECF No. 14, Exs. B, C.) Chief Lauth conducted a formal investigation. (*See* ECF No. 32-1, Ex. A ("Policy").) Chief Lauth found that each of Peterson's complaints was unsubstantiated, so the officers were exonerated. (Lauth Report at 3–5.)

---

[2] Peterson's arrest may have also resulted from his refusal to remove his hands from his pockets after the officers instructed him to do so. *Peterson*, 2020 WL 7689735, at *1.

In October 2015, Peterson went to City Hall to make a data request to help him investigate a possible civil rights suit against the officers. (Compl. ¶ 45.) About a week later, the City served Peterson with a trespass notice that prohibited Peterson from entering City Hall and the surrounding parking lots. (*Id.* ¶ 46; ECF No. 1-4.) The trespass notice was in effect for one year, until November 3, 2016. (ECF No. 1-4.) In a letter accompanying the trespass notice, City Manager Ziemer explained that if Peterson had any legitimate business at City Hall, he would have to conduct such business by telephone, U.S. Mail, email, or by having an agent act on his behalf. (*Id.*)

In 2016, Peterson sued Captain Nikituk and Officers Lang and Maltby, alleging unlawful seizure in violation of the First and Fourth Amendments. *Peterson v. Nikituk*, No. 16-CV-743 (RHK/SER), ECF No. 1-1 (D. Minn. Mar. 23, 2016). After the officers filed a motion for summary judgment, the parties stipulated to dismiss the action with prejudice. *Id.*, ECF No. 26 (D. Minn. May 4, 2017). Based on the stipulation, Judge Richard H. Kyle dismissed the action with prejudice. *Id.*, ECF No. 28 (D. Minn. May 5, 2017).

More than two-and-a-half years after Chief Lauth issued his report, in November 2017, Peterson filed a third Citizen Complaint Form. (ECF No. 14, Ex. D.) In general, Peterson claimed that Chief Lauth failed to properly investigate his complaints and committed two fifth-degree assaults against Peterson—one during the January 2014 incident and the other when Chief Lauth attached to his report a copy of the Minnesota

statute criminalizing the submission of a false police report.[3] (*Id.*) In accordance with its Policy, the City retained Attorney Olson to review this third complaint. (Compl. ¶ 35; Policy § V.B.2 (requiring the assignment of the investigation to an "external agency" when the Chief of Police is the subject of the complaint).) Olson determined that Peterson's third complaint was unfounded and recommended the City take no further action. (ECF No. 1-3.)

In March 2020, Peterson filed a second lawsuit stemming from the January 2014 incident. *Peterson v. City of N. St. Paul*, No. 20-CV-854 (ECT/KMM), ECF No. 1 (D. Minn. Mar. 31, 2020). In this suit, brought only against the City, Peterson alleged that the City violated his procedural due process, substantive due process, and Fourth Amendment rights by arresting him and requesting Olson's review of Peterson's third complaint. *Id.,* ECF No. 13 ¶¶ 41–57 (D. Minn. July 31, 2020). After the City moved to dismiss, Peterson voluntarily dismissed the case. *Id.*, ECF Nos. 22, 24 (D. Minn. Sept. 5, 2020, Sept. 8, 2020).

Peterson now brings his third lawsuit based on the January 2014 incident and its fallout. He alleges three procedural due process violations. First, Peterson alleges that he was denied his right to procedural due process as a result of "defendants' unlawful conduct."[4] (Compl. ¶¶ 47–53.) Second, Peterson alleges that Attorney Olson violated his

---

[3] In Peterson's view, this was an assault because Chief Lauth attached this statute "in an attempt to intimitead [sic] or cause fear in Peterson." (ECF No. 14, Ex. D.)

[4] As discussed below, it is not clear against which Defendants Peterson brings this claim, or on what conduct it is based. *See infra* Analysis II.A.

due process rights by conducting a deficient investigation into Peterson's third complaint. (*Id.* ¶¶ 54–61.) Finally, Peterson alleges that City Manager Ziemer violated his procedural due process rights by denying him access to City Hall. (*Id.* ¶¶ 62–67.) All Defendants move to dismiss for failure to state a claim, (ECF Nos. 11, 17), and all Defendants except Attorney Olson move for attorneys' fees and costs. (ECF No. 29.) More than three months after Defendants filed their motions to dismiss, Peterson moved to amend his Complaint. (ECF No. 50.)

## ANALYSIS

### I.      Motion to Amend

The Court should consider Peterson's motion to amend before the motions to dismiss. *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) (holding that it was plainly erroneous for the district court to grant a motion to dismiss and then deny a motion to amend as moot).

The time for Peterson to amend as of right has passed, so he may only amend his Complaint with the Court's permission. Fed. R. Civ. P. 15(a)(2). Although leave to amend should be "freely" granted "when justice so requires," *id.*, it may be denied when "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (citation omitted). A proposed amendment is futile if it could

not survive a motion to dismiss under Rule 12(b)(6). *Hillesheim v. Myrom's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). Accordingly, the proposed amended complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and citation omitted).

Peterson's Amended Complaint contains two additions to his first Complaint. First, Peterson seeks to add factual allegations concerning City Manager Ziemer's issuance of the trespass notice. (ECF No. 50-2 ("Am. Compl.") ¶¶ 45–50, 68, 70–75, 77–79.) Second, Peterson adds language that alludes to a void for vagueness claim. (*Id.* ¶¶ 69, 76.) The Court concludes that both additions are futile.

### A.  *Additional Factual Allegations Regarding the Trespass Notice*

Peterson added allegations concerning City Manager Ziemer's issuance of a trespass notice. (*Id.* ¶¶ 45–50, 68, 70–75, 77–79.) These allegations relate to Peterson's claim that the issuance of the trespass notice violated his procedural due process rights. (*See id.* ¶¶ 66–79.) But even with these additions, Peterson's procedural due process claim relating to the trespass notice would not survive a Rule 12(b)(6) motion. The Court must therefore deny the motion to amend as to these added allegations. *Humphreys v. Roche Biomedical Labs., Inc.*, 990 F.2d 1078, 1082 (8th Cir. 1993) ("It is settled law that district courts may properly deny leave to amend if the proposed changes would not save the complaint.") (citation omitted).

To state a claim for a procedural due process violation, the plaintiff must establish that she was denied a property or liberty interest. *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011) (citation omitted). There is no property or liberty interest in "having unlimited access to a public building." *Royer ex rel. Est. of Royer v. City of Oak Grove*, 374 F.3d 685, 689 (8th Cir. 2004). Courts have routinely concluded that members of the public do not have a protected interest in being able to freely access public buildings. *E.g.*, *id.*; *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) (holding that a one-year ban from a community center did not deprive the plaintiff of a liberty interest); *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 757–58 (7th Cir. 2012) (concluding that a ban from public property did not deprive the plaintiff of a protected liberty interest); *Vincent v. City of Sulphur*, 805 F.3d 543, 548–51 (5th Cir. 2015) (reasoning that a temporary ban from city property, including city hall, did not violate any clearly established due process rights). Peterson's new factual allegations do not impact this analysis or alter the Court's conclusion. The City's one-year ban of Peterson from City Hall did not deprive Peterson of a protected liberty interest, so his procedural due process claim against City Manager Ziemer and the City of North St. Paul fails, rendering his proposed amendments futile.

### B.  *Void for Vagueness*

Two of Peterson's proposed additional allegations use language from the well-established test for void for vagueness. (Am. Compl. ¶¶ 69 (alleging that the City's

"unwritten policy" is "inherently vague" and "permits selective enforcement," 76 (alleging that the "policy fails to give adequate notice of what conduct is prohibited")); *see Johnson v. United States*, 576 U.S. 591, 595 (2015) (explaining that a law is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes," or is "so standardless that it invites arbitrary enforcement").

But aside from the boilerplate legal conclusions contained in these two paragraphs of the Amended Complaint, Peterson has failed to allege any facts demonstrating that he is plausibly entitled to relief on any claim of unconstitutional vagueness. To start, it is not clear what City policy Peterson claims is vague. Peterson alleges that the City had an "unwritten policy to delegate authority to the City Manager to issue trespass notices banning individuals from entering City hall." (Am. Compl. ¶ 49.) But in other places, Peterson complains of the City's lack of guidelines to determine when to issue a trespass notice. (*E.g.*, *id.* ¶ 74.) And when asked at the hearing, Peterson could not identify which specific policy he is claiming is unconstitutionally vague. Because he has not identified a specific policy that is vague, Peterson's void for vagueness claim would not survive a motion to dismiss under Rule 12(b)(6), so amendment would be futile.

## II.   Motions to Dismiss

Rule 12(b)(6) requires the Court to dismiss a complaint if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a Rule 12(b)(6) motion, a court must "tak[e] all facts

alleged in the complaint as true, and mak[e] reasonable inferences in favor of the nonmoving party." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). Although the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, where a complaint alleges "facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief'" and the Court must dismiss it. *Id.* (quoting *Twombly*, 550 U.S. at 557).

### A. Construal of Count I

Count One alleges a procedural due process violation, but it is unclear against whom this claim is pled and upon what conduct it is based. (*See* Compl. ¶¶ 47–53.) For example: Peterson alleges that he was denied procedural due process as a result of "defendants' unlawful conduct," (*Id.* ¶ 53), but he does not specify what the allegedly unlawful conduct is. Similarly, he alleges he had procedural due process rights "[a]t the time of the complained of events," (*Id.* ¶ 48), but fails to specify which "complained of events" he is referring to. Finally, Peterson alleges his injuries were caused by "[t]he acts or omissions of the defendants," (*Id.* ¶ 51), but again fails to specifically plead which acts

or omissions he is referring to. In sum, Count I fails to inform the Court of the basis of the claim.

In the absence of clarity on the basis for this claim, the Court deduces that the claim is likely based on Chief Lauth's review of Peterson's first two complaints. Peterson's Complaint includes allegations concerning three events: (1) Chief Lauth's investigation of Peterson's first two complaints, (*Id.* ¶¶ 10–34); (2) Attorney Olson's review of Peterson's third complaint, (*Id.* ¶¶ 35–44); and (3) City Manager Ziemer's issuance of a trespass notice to Peterson, (*Id.* ¶¶ 45–46). The latter two set of allegations correspond to Counts II and III, leaving only Peterson's allegations about Chief Lauth's investigation unaccounted for. Because those allegations do not correspond to a claim, the Court interprets Count I to be based on Chief Lauth's investigation.

## B. *Existence of a Protected Right*

A plaintiff bringing a procedural due process claim must allege that there is a protected liberty or property interest at stake and that the defendant deprived him of that interest without due process of law. *Schmidt*, 655 F.3d at 817 (citation omitted). At the hearing, Peterson clarified that he is only claiming that he was denied a liberty interest, not a property interest. A liberty interest may arise through the Constitution or state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). Peterson has failed to identify a protected liberty interest for any of his three claims, so they must be dismissed.

1. *Lauth's Investigation and Report*

Although not evident from the face of the Complaint, Peterson seems to assert in Count I that he had a constitutional right to an investigation that conformed with the North St. Paul Police Department's Policy. (Compl. ¶¶ 10–34 (alleging deficiencies with Lauth's report), 47–53; *e.g.*, ECF No. 30 at 16 ("There is a City policy that gives plaintiff an entitlement to an internal investigation of his complaint. By doing so, the City policy creates a procedural due process right to a proper internal investigation.").) Peterson identifies myriad alleged deficiencies in Chief Lauth's investigation. For example, Chief Lauth failed to interview Peterson and other potential witnesses, and he did not provide any written statements along with his report. (Compl. ¶ 19.) According to Peterson, there are also multiple discrepancies between the police incident reports on which Chief Lauth relied and what really happened during the January 2014 incident. (*Id.* ¶ 31.)

Although state laws and policies may create protected liberty interests, "[t]he simple specification of a particular procedure does not create" such an interest. *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 764 (2005) (explaining that "an entitlement to nothing but procedure" cannot be the basis for standing, much less a protected interest). State regulations only create a protectable liberty interest when they (1) substantively limit official discretion; and (2) "contain explicit mandatory language comprising specific directives to the decision maker that if the regulations' substantive predicate acts are present, a particular outcome must

follow." *Williams*, 1 F.3d at 717 (internal quotation marks and citation omitted). In other words, the law or regulation must compel the government official to reach a "particular outcome or response when certain criteria are found to exist." *Id.* at 718. A court should not pore over the regulation in search of any mandatory language—instead, the mandatory language must pertain to the "particular interest in question." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 464 n.4 (1989).

In general, a person is not entitled to an investigation of police misconduct, so there is no constitutionally protected interest in an investigation. *E.g.*, *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002). The presence of a police department policy governing investigations does not change this result; the Policy does not grant Peterson a protected liberty interest. The Policy merely outlines the procedure the Chief of Police must use to investigate allegations of police misconduct—it does not mandate a specific substantive outcome if the Chief finds certain predicates, at least as it pertains to the portions Peterson highlights.

In opposition, Peterson points, for instance, to Chief Lauth's failure to include written statements in his summary of the investigation. (Compl. ¶ 19.) The Policy states that the Chief of Police "shall prepare a report . . . contain[ing] all relevant information." (Policy § V.B.7.) It must be organized into three sections, one of which is "investigation," and written statements must be included in that section (*Id.*; *id.* § V.B.7.b.) Chief Lauth's report included no written statements; in Peterson's view, this constituted a denial of his

liberty interest in an investigation that mandated the inclusion of written statements. Peterson also claims that Chief Lauth's failure to interview him, other department members, and all other available witnesses, as the Policy requires, violated his due process rights. (Compl. ¶¶ 19–20.) These parts of the Policy, however, are purely procedural—they do not compel the Chief of Police to reach any particular outcome. *Williams*, 1 F.3d at 717–18 (citation omitted). The Policy does not dictate what outcome Chief Lauth should reach, it merely instructs him how to reach and present the outcome of the investigation.

Peterson's claim also fails because he would have received no direct benefit from an investigation that conformed with the Policy, so he was not entitled to such an investigation. *Cf. Gonzales*, 545 U.S. at 768 ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations."). The failure of police to investigate alleged police misconduct or a failure to perform a satisfactory investigation does not affect the complainant, so such failures cannot be the basis for a procedural due process claim. *Givens v. City & Cnty. of S.F.*, No. C 06-2505 MHP (pr), 2011 WL 1225584, at *2 (N.D. Cal. Apr. 1, 2011) (noting that, aside from "perhaps emotional satisfaction," a finding that police officers should be disciplined would have no impact on plaintiff and thus plaintiff's procedural due process claim failed) (citations omitted); *Merrick v. Kahley*, No. 1:12-CV-1878, 2013 WL 2392997, at

*12 (M.D. Pa. June 3, 2013) (concluding that there is no "constitutional right or interest in the discipline or investigation of others"), *report & recommendation adopted*, No. 1:12-cv-1878, ECF No. 15 (M.D. Pa. June 3, 2013). Peterson may have an "abstract need or desire" to see the officers he claims wronged him punished, but he has no entitlement to this outcome. *Gonzales*, 545 U.S. at 756.

Peterson's arguments in response are unavailing. He first attempts to distinguish Defendants' cases because those cases were not based on a department policy governing investigations. (ECF No. 30 at 14–15.) Even accepting this distinction and assuming those cases are inapplicable, Peterson would still have to show, under *Williams v. Nix*, that the Policy requires a specific outcome under the circumstances in this case. 1 F.3d at 717. For the reasons explained above, he has not done so. Peterson is correct that the Policy limits the discretion of the Chief of Police as to how to conduct investigations into police misconduct, but that is only half of what he must show to establish a protected liberty interest.

Second, Peterson claims that there is a special relationship between him and the City because the Policy requires an investigation. (ECF No. 30 at 16.) The sole case Peterson cites, *Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987), does not support his argument. In *Taylor*, the Eleventh Circuit held that a child involuntarily placed in a foster home may bring a Section 1983 claim against state officials involved in the foster care system, in part because there is a special relationship between state officials

in charge of the foster care system and the children in the system. *Id.* at 797–98. Other "special relationships" are generally custodial in nature and include "the relationship between prisoners and wardens and hospitals and patients." *Id.* at 798. In the Eighth Circuit, a special relationship exists when the state has "affirmative duties of care and protection with respect to *particular individuals*." *Glasgow v. Nebraska*, 819 F.3d 436, 442 (8th Cir. 2016) (emphasis original) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198 (1989)). Peterson has not alleged that the City or its police department had an affirmative duty of care and protection to Peterson, so the Court cannot conclude that there is any special relationship.

Peterson's third argument is that the Policy contains "mandatory language" and so it grants Peterson a protected liberty interest. (ECF No. 30 at 17–18.) This argument is tantamount to claiming that the Policy compels a particular outcome, which, as explained above, it does not. The cases Peterson cites underscore this point. In each, the court concluded that the law or regulation required a certain outcome if the decisionmaker found certain factual predicates. The statutes in *Board of Pardons v. Allen* and *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex* required the parole boards to order a prisoner to be released if the board found certain facts. 482 U.S. 369, 377–78 (1987); 442 U.S. 1, 11–12 (1979). In *Hewitt v. Helms*, the statute set forth rules regarding whether, based on certain facts, a prisoner could be held in solitary confinement. 459 U.S. 460, 471–72, 471 n.6 (1983). Thus, in each case the statute or regulation required a certain outcome—

16

release from custody or from solitary confinement. By contrast, the Policy requires no specific outcome—it grants latitude to the Chief of Police to reach one of multiple possible conclusions based on the investigation. Peterson claims that "an investigation satisfying the 'substantive predicates' set forth in the City policy" is a particular result the Policy compels. (ECF No. 30 at 19.) But again, the Policy outlines nothing but the procedure for conducting an investigation, and procedural requirements alone cannot sustain a due process claim. The results contemplated by the Policy are "exonerated," "sustained," and "not sustained." (Policy § V.C.1.) The aspects of the Policy Peterson points to are merely procedures to reach one of those outcomes—not outcomes themselves.

### 2. *Attorney Olson's Investigation and Report*

Peterson's similarly bases his procedural due process claim against Attorney Olson on an alleged departure from the Policy. If the Chief of Police is the subject of a complaint, the Policy requires the City to assign the investigation to an "external agency." (Policy § V.B.2.) Peterson claims that Attorney Olson's firm, to whom the City assigned the investigation, is not an "external agency" for purposes of the Policy. (Compl. ¶ 35.) This claim fails for the same reasons Count One failed. This section of the Policy is also merely procedural—it does not compel any certain outcome. *Williams*, 1 F.3d at 717–18. Additionally, Peterson has no cognizable interest in ensuring that the investigation is correctly assigned. *Cf. Gonzales*, 545 U.S. at 768.

Peterson also claims that Attorney Olson's deficient investigation violated his procedural due process rights. (Compl. ¶¶ 36–44.) Again, there is no constitutional right to an investigation, so Peterson cannot bring a procedural due process claim based on any alleged deficiencies. *Vinyard*, 311 F.3d at 1356.

### 3. *Trespass Notice*

For the reasons discussed above, *supra* Analysis Section I.A, Peterson has failed to state a procedural due process claim based on the City issuing him a trespass notice. As such, that claim is dismissed.

## III.   Motion for Attorneys' Fees and Costs

When a plaintiff has previously dismissed an action and files another suit based on the same claim against the same defendant, Rule 41(d) of the Federal Rules of Civil Procedure permits a court to order the plaintiff to pay costs associated with the previous action. Fed. R. Civ. P. 41(d)(1). To recover costs, a party must show that (1) the plaintiff's previous action was dismissed; (2) the plaintiff filed a second action based on the same claim against the same defendant; and (3) the defendant incurred costs and attorneys' fees in the previous action that will not be useful in the subsequent litigation. *Siepel v. Bank of Am., N.A.*, 239 F.R.D. 558, 563 (E.D. Mo. 2006) (citations omitted). The award of costs under Rule 41(d) is intended to deter forum-shopping and vexatious litigation. *Simeone v. First Bank Nat'l Ass'n*, 971 F.2d 103, 108 (8th Cir. 1992). Attorneys' fees are a recoverable cost under Rule 41(d). *Kent v. Bank of Am., N.A.*, 518 F. App'x 514, 517 (8th

Cir. 2013) (holding that the district court did not abuse its discretion by awarding attorneys' fees under Rule 41(d)).

An award of attorneys' fees and costs is warranted here. The "same defendant" element is satisfied as to the City—Peterson sued the City in the second federal suit and also in the present suit.[5] *See Peterson v. City of N. St. Paul*, No. 20-CV-854 (ECT/KMM), (D. Minn.). So too is the "same claim" element. In the second federal suit, Peterson also sued the City for a procedural due process violation based on Attorney Olson's review of one of Peterson's complaints. *Id.*, ECF No. 13 ¶¶ 50–57. Finally, the Court finds that the City incurred costs in that suit that will not be useful here. For one, the City had to brief several issues that were not relevant in this case. *E.g., id.*, ECF No. 11 at 8–18 (briefing Peterson's Fourth Amendment claim), 19–22 (addressing Peterson's substantive due process claim). The City also had to adjust its motion to dismiss after Peterson amended his Complaint, and it had to prepare for and attend a hearing regarding the motion to dismiss. *Id.*, ECF Nos. 16, 23.

Further, awarding attorneys' fees and costs is consistent with the purpose of Rule 41(d)—preventing vexatious litigation. *Simeone*, 971 F.2d at 108. This is Peterson's third suit stemming, in some form, from the January 2014 incident. He has filed or

---

[5] The addition of other defendants in this suit is irrelevant. *Simeone v. First Bank Nat'l Ass'n*, 125 F.R.D. 150, 154 (D. Minn. 1989) ("The addition of new defendants in a second suit . . . does not preclude the Court from awarding costs to one who was a party to the previous action.").

attempted to file six different complaints, but all three of his suits have met the same fate—dismissal. At the hearing, Peterson's counsel admitted that he was learning about Section 1983 claims on the fly. The City (and, by extension, its taxpayers) should not have to foot the bill for Peterson's counsel's learning curve. Such persistent meritless litigation is surely vexing for the City and its employees, and awarding fees in this scenario will serve the purpose of Rule 41(d) by deterring future vexatious litigation.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.      Erik Peterson's motion to amend (ECF No. 50) is DENIED;

2.      Robb L. Olson's motion to dismiss (ECF No. 11) is GRANTED;

3.      The City of North St. Paul, Tom Lauth, and Jason Ziemer's motion to dismiss (ECF No. 17) is GRANTED;

4.      The City of North St. Paul, Tom Lauth, and Jason Ziemer's motion for attorneys' fees and costs (ECF No. 29) is GRANTED; and

5.      Erik Peterson's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.

6.      The City of North St. Paul, Tom Lauth, and Jason Ziemer shall, within 30 days of receipt of this order, submit a request for attorneys' fees with documentation of fees incurred.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: November 10, 2021                    BY THE COURT:

                                            s/Nancy E. Brasel
                                            Nancy E. Brasel
                                            United States District Judge